UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

OPERATION KING'S DREAM, KWAME M.
KILPATRICK, LOCALS 207 and 312 of the               Hon. Arthur J. Tarnow
AMERICAN FEDERATION OF STATE,                       Case No. 06-cv-12773
COUNTY, AND MUNICIPAL EMPLOYEES,
SAMANTHA CANTY, BELITHA H. COWAN,                   Hon. R. Steven Whalen
MARTHA CUNEO, LINDA DEE MCDONALD,
MICHELLE MCFARLIN, PEARLINE MCRAE,
and SARAII SMITH,

        Plaintiffs,
v

WARD CONNERLY, JENNIFER GRATZ,
and the MICHIGAN CIVIL RIGHTS INITIATIVE,
AND TERRI LYNN LAND, in her official capacity
as Secretary of State; KATHRYN DEGROW,
LYNN BANKES, and DOYLE O'CONNOR,
in their official capacities as members of the
State Board of Canvassers; and CHRISTOPHER
THOMAS, in his official capacity as State Director of Elections,

        Defendants.
_____/

George B. Washington (P26201)
Attorney for Plaintiffs
Scheff & Washington, P.C.
Attorney for Plaintiffs
645 Griswold, Ste 1817
Detroit, MI 48226
(313) 863-1921
_____

Heather S. Meingast (P55439)
Patrick O' Brien (P27306)
Assistant Attorneys General
Attorney for Defendants Land, DeGrow, Bankes,
and Thomas
Michigan Department of Attorney General
Public Employment, Elections & Tort Division
P.O. Box 30736
Lansing, Michigan 48909
(517) 373-6434
_____

## STATE DEFENDANTS' MOTION TO DISMISS PURSUANT TO FR CIV P 12(b)(6) AND MEMORANDUM OF LAW IN SUPPORT OF MOTION

NOW COME Defendants Secretary of State Terri Lynn Land, Director of Elections Christopher Thomas, Katherine DeGrow, Lyn Bankes, and Doyle O'Connor of the Board of State Canvassers, by and through their attorneys, Attorney General Mike Cox, Assistant Attorneys General Heather S. Meingast and Patrick O'Brien, and state in support of their motion to dismiss as follows:

1. Plaintiffs are citizens and entities opposing a ballot initiative sponsored by Defendant Michigan Civil Rights Initiative, which has been ordered onto the November 2006 general election ballot by the Michigan Court of Appeals in *Michigan Civil Rights Initiative v Board of State Canvassers.*

2. Plaintiffs bring this federal action under Section 2 of the Voting Rights Act of 1965. (Complaint, ¶¶ 11-12.) [1]

3. Section 2 of the Voting Rights Act of 1965 prohibits a State or political subdivision from imposing any electoral practice or procedure that "results in a denial or abridgement of the right of any citizen of the United States to vote on account of race or color." [2]

4. The dispute in this case involves the initiative petition process authorized by the State Constitution and statutes, and allegations of fraud perpetrated by petition circulators for Defendant Michigan Civil Rights Initiative.

5. Courts have held that the initiative petition process does not fall within the scope of the Voting Rights Act because it is too far removed from the act of voting, which is protected by the Act. [3]

---

[1] 42 USC 1973.
[2] 42 USC 1973(a).

6. Dismissal of Plaintiffs' Complaint is therefore appropriate because the Voting Rights Act does not support a cause of action based on disputes involving the initiative petition process.

7. Even if the Act does somehow apply to the facts of this case, dismissal is still warranted because Plaintiffs have not identified what "voting qualification or prerequisite to voting or standard, practice, or procedure" has or will be "imposed or applied" by the State "in a manner which [will] result[ ] in a denial or abridgement of the right of any citizen of the United States to vote on account of race or color."

8. The State Defendants have imposed no practices or procedures that will deny or abridge any of the Plaintiffs or any other citizen of their right to vote on this ballot proposal. Rather, the State Defendants have acted pursuant to a court order to prepare for placement of this proposal on the November 2006 general election ballot, at which time all qualified and registered electors will have the opportunity to vote on the issue.

9. Similarly, the factual basis for Plaintiffs' claims is the alleged fraud perpetrated by the Michigan Civil Rights Initiative petition circulators – private citizens. The Voting Rights Act only protects against actions taken by state actors.[4] Plaintiffs do not claim that the State Defendants participated in the alleged misrepresentations made by the petition circulators.

10. Dismissal of Plaintiffs' Complaint is therefore warranted because the State Defendants have taken no action that will result in a denial or abridgement of the right of any citizen of the United States to vote on account of race or color.

---

[3] See, e.g., *Montero v Meyer*, 861 F2d 603 (CA 10, 1988).
[4] See, e.g., *Welch v McKenzie*, 765 F2d 1311 (CA 5, 1985).

11. Accordingly, in lieu of answering the Complaint, the State Defendants move to dismiss the Complaint pursuant to FR Civ P 12(b)(6) for failure to state a claim upon which relief can be granted.[5]

WHEREFORE, Defendants Secretary of State Terri Lynn Land, Director of Elections Christopher Thomas, Katherine DeGrow, Lyn Bankes, and Doyle O'Connor of the Board of State Canvassers, request that this Court dismiss Plaintiffs' Complaint for failure to state a claim under FR Civ P 12(b)(6).

## THE STATE DEFENDANTS MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

### CONCISE STATEMENT OF ISSUE PRESENTED

**I.    Section 2 of the Voting Rights Act of 1965 prohibits States from imposing voting qualifications, prerequisites to voting, standards, practices, or procedures that result in the denial or abridgement of the right of any citizen to vote on account of race or color.  Plaintiffs' claim to be aggrieved by alleged fraud in the petition signature gathering process successfully completed by the Michigan Civil Rights Initiative, the sponsor of the initiative petition in question.  Because Plaintiffs have not alleged the imposition of any qualification, prerequisite, standard, practice or procedure that has or will deny or abridge Plaintiffs' right to vote on account of race or color, their Complaint fails to state a claim upon which relief may be granted, and should be dismissed by this Court.**

---

[5] Defendants sought concurrence in the motion pursuant to LR 7.1(a).

**STATEMENT OF THE FACTS**

As Plaintiffs observe in their Complaint, the history of the Michigan Civil Rights Initiative petition is long and complicated. Fortunately, much of the saga was set forth by the Michigan Court of Appeals in *Michigan Civil Rights Initiative v Board of State Canvassers (MCRI)*, the second of its published decisions regarding this petition.[6]

The initiative petition seeks to amend the Michigan Constitution by adding a new § 25 to Article 1. The proposed amendment provides[7]:

"ARTICLE 1, SECTION 25:

Civil Rights.

(1) The University of Michigan, Michigan State University, Wayne State University, and any other public college or university, community college, or school district shall not discriminate against, or grant preferential treatment to, any individual or group on the basis of race, sex, color, ethnicity, or national origin in the operation of public employment, public education or public contracting.

(2) The state shall not discriminate against, or grant preferential treatment to, any individual or group on the basis of race, sex, color, ethnicity, or national origin in the operation of public employment, public education, or public contracting.

(3) For the purposes of this section 'state' includes, but is not necessarily limited to, the state itself, any city, county, any public college, university, or community college, school district, or other political subdivision or governmental instrumentality of or within the State of Michigan not included in sub-section 1.

(4) This section does not prohibit action that must be taken to establish or maintain eligibility for any federal program, if ineligibility would result in a loss of federal funds to the state.

(5) Nothing in this section shall be interpreted as prohibiting bona fide qualifications based on sex that are reasonably necessary to the normal operation of public employment, public education, or public contracting.

---

[6] *Michigan Civil Rights Initiative v Board of State Canvassers*, 268 Mich App 506, 510; 708 NW2d 139 (2005). Plaintiff Operation King's Dream participated as an intervening party in that case. The previous published decision is *Coalition to Defend Affirmative Action & Integration v Bd of State Canvassers*, 262 Mich App 395; 686 NW2d 287, lv den 471 Mich 939 (2004).
[7] *MCRI*, 268 Mich App at 510.

> (6) The remedies available for violations of this section shall be the same, regardless of the injured party's race, sex, color, ethnicity, or national origin, as are otherwise available for violations of Michigan's anti-discrimination law.
>
> (7) This section shall be self-executing. If any part or parts of this section are found to be in conflict with the United States Constitution or federal law, the section shall be implemented to the maximum extent that the United States Constitution and federal law permit. Any provision held invalid shall be severable from the remaining portions of this section.
>
> (8) This section applies only to action taken after the effective date of this section.
>
> (9) This section does not invalidate any court order or consent decree that is in force as of the effective date of this section."

The *MCRI* Court aptly summarized the events that have unfolded around this petition as follows[8]:

> After MCRI filed the petition in 2003, the [State Board of Canavssers] conducted a public hearing on December 11, 2003, to determine whether the form of the petition met the requirements of the Michigan Election Law, MCL 168.1 *et seq*. Two organizations, the Coalition to Defend Affirmative Action & Integration and Fight for Equality by Any Means Necessary (BAMN) and the Citizens for a United Michigan (CFUM), opposed the petition and claimed that the proposed language of the petition violated MCL 168.482(3), which requires that a petition state whether it would alter or abrogate an existing provision of the Constitution and include the text of the constitutional provision that would be changed or eliminated by the proposal. These organizations also objected to the inclusion, content, and placement of summaries of the proposal on the petition. After the hearing, the board voted to approve the petition. BAMN and CFUM filed separate actions for mandamus against the board in the Ingham Circuit Court, again challenging the form of the petition. After ruling that the petition form failed to conform to MCL 168.482(3), the circuit court granted an order of mandamus, directing the board to rescind its approval. The board then filed claims of appeal from both cases, and in turn, this Court expedited the appeal, and issued a published opinion that reversed the circuit court's ruling that the petition did not comply with MCL 168.482(3). Specifically, this Court held that the proposed amendment did not "add to, delete from or change the existing wording of" Article 1, § 2, because the current language of that provision was unaffected by the amendment and the amendment did not render the provision "wholly inoperative." Accordingly, this Court ruled that the circuit court erred in granting mandamus relief and directed the board to reinstate its approval of the form of the petition.

---

[8] *MCRI*, 268 Mich App at 510-511 (internal citations omitted).

6

Apparently because of timing issues, MCRI chose not to pursue reinstatement of the petition for placement on the ballot in 2004, but, instead, circulated new petitions for placement of the proposal on the November 2006 general election ballot. On January 6, 2005, MCRI filed approximately 508,202 signatures in support of its initiative petition. The Secretary of State staff reviewed the petition, which included a random sampling of 500 signatures.

On April 18, 2005, two groups, Operation King's Dream (OKD) and BAMN filed a challenge to the MCRI petition. The challengers accepted the 500 signatures as representative and conducted their own review. They claimed that a significant number of the sampled signatures were procured by MCRI circulators through fraud. Among other claims, the challengers maintained that the petition language was deceptive and that the petition drive was funded by out-of-state interests, which were not properly reported under the Campaign Finance Act, MCL 169.201 *et seq*. MCRI filed a response to the challenge and pointed out that it submitted 508,202 signatures, whereas in order to qualify for the ballot, only 317,757 valid signatures were needed, and that the petition itself fairly revealed its nature and purpose and was available to be read by any signer of the petition.

On July 13, 2005, the [Bureau of Elections] staff review report was issued, which examined the 500 sampled signatures, and found 450 valid signatures and 50 invalid signatures. The report noted that the 50 signatures were discounted because they were facially defective or were rejected on the basis of the signer's registration status, and that although 42 of the 50 invalid signatures were also identified in the challenge, these signatures were not rejected on the basis of the challenge. The report further concluded that the petition was sufficient under the standard procedures traditionally employed to sample petitions.

The board conducted a lengthy hearing on July 19, 2005, at which time the challengers and their witnesses and MCRI and their witnesses made their presentations. Upon conclusion of these presentations, one board member moved that the board, with the assistance of the Bureau of Elections, conduct an investigation and hearings regarding the challenge relating to the allegations of fraud and "doubtful signatures" on the basis of the board's authority to conduct any hearing upon any complaint pursuant to MCL 168.476(2). The board split on the vote of two to two, and the motion did not pass. Another board member moved to certify the petition, which also did not pass on a vote of one to two, with one abstention. Various other motions also did not reach a majority consensus.

As a result, MCRI filed its complaint for mandamus and sought a directive from this Court to the board to certify the petition for placement on the November 2006 ballot.

On October 31, 2005, the Michigan Court of Appeals concluded that the Board of State Canvassers had neither constitutional nor statutory authority to investigate the claims of fraud or

to invalidate signatures on this basis: "Because the Legislature failed to provide the board with authority to investigate and determine whether fraudulent representations were made by the circulators of an initiative petition, we hold that the board has no statutory authority to conduct such an investigation."[9] The Court further observed that "an attempt by the board to go beyond its authority as clearly outlined in the Constitution and statutes undermines the constitutional provision that reserves for the people of the state of Michigan the power to propose laws through ballot initiatives."[10] Thus, the Court granted the request for mandamus and remanded "to the Board of State Canvassers with directions to approve the petition for placement on the November 2006 ballot."[11]

On November 21, 2005, Operation King's Dream filed a motion for reconsideration of the Court of Appeals' October 31, 2005, opinion and order. On December 7, 2005, the Court issued an order denying the motion for reconsideration, denying a motion for stay and ordering that "[t]he Board of State Canvassers shall approve and certify the petitions, forthwith, and the Secretary of State shall take all necessary measures to place the proposal on the November 2006 general election ballot. This directive shall have immediate effect. MCR 7.215(F)(2)."[12] Despite the Court's order, the Board was unable to pass a motion to certify the petition for placement on the ballot at a December 14, 2005, meeting, which was disrupted by a large number of protesters opposing the petition. MCRI subsequently moved the Court of Appeals for an order of contempt and for certification of the petition. On December 20, 2005, the Court of Appeals entered an order directing the Secretary of State to take all necessary steps to place the initiative on the November 2006 general election ballot, and declining to address the issue of

---

[9] *MCRI*, 268 Mich App at 520.
[10] *MCRI*, 268 Mich App at 520.
[11] *MCRI*, 268 Mich App at 520.
[12] See http://courtofappeals.mijud.net/documents/coa/public/orders/2005/264204(71)_order.pdf.

contempt at that time.[13] The Court subsequently ordered Defendant Thomas to prepare the ballot summary of the proposal, which was later approved by the Board of Canvassers in January 2006.[14] As a result of the Court of Appeals' order, Secretary of State Land and Director Thomas have no discretion *but* to place the initiative on the ballot absent an order by the Michigan Supreme Court.

Operation King's Dream filed an application for leave to appeal with the Michigan Supreme Court, which was denied on March 29, 2006.[15] On April 18, 2006, Operation King's Dream filed a motion for reconsideration of the denial of the application. The Michigan Civil Rights Commission filed a motion in support of the motion for reconsideration, asking that the Supreme Court refrain from deciding the motion until the Commission had filed a report regarding its investigation into the claims of fraudulent petition circulation. The Commission subsequently filed its report with the Court on June 7, 2006. The motion for reconsideration thus remains pending before the Michigan Supreme Court.

---

[13] See http://courtofappeals.mijud.net/documents/coa/public/orders/2005/264204(94)_order.pdf.
[14] See http://courtofappeals.mijud.net/documents/coa/public/orders/2005/264204(100)_order.pdf. The approved ballot summary provides:

> The proposed constitutional amendment would:
>
> Ban public institutions from using affirmative action programs that give preferential treatment to groups or individuals based on their race, gender, color, ethnicity or national origin for public employment, education or contracting purposes. Public institutions affected by the proposal include state government, local governments, public colleges and universities, community colleges and school districts.
>
> Prohibit public institutions from discriminating against groups or individuals due to their gender, ethnicity, race, color or national origin. (A separate provision of the state constitution already prohibits discrimination on the basis of race, color, or national origin.)

See http://www.michigan.gov/documents/Bal_Lang_MCRI_152610_7.pdf.
[15] *Michigan Civil Rights Initiative v Board of State Canvassers*, 474 Mich 1099; 711 NW2d 82 (2006).

# ARGUMENT

**I. Section 2 of the Voting Rights Act of 1965 prohibits States from imposing voting qualifications, prerequisites to voting, standards, practices, or procedures that result in the denial or abridgement of the right of any citizen to vote on account of race or color. Plaintiffs' claim to be aggrieved by alleged fraud in the petition signature gathering process perpetrated by the Michigan Civil Rights Initiative, the sponsor of the initiative petition in question. Because Plaintiffs have not alleged the imposition of any qualification, prerequisite, standard, practice or procedure that has or will deny or abridge Plaintiffs' right to vote on account of race or color, their Complaint fails to state a claim upon which relief may be granted, and should be dismissed by this Court.**

  A.  Standard of Review

A motion to dismiss pursuant to FR Civ P 12(b)(6) tests the sufficiency of a complaint. In a light most favorable to a plaintiff, the court must assume that the plaintiff's factual allegations are true and determine whether the complaint states a valid claim for relief.[16] A district court need not, however, accept as true any legal conclusions or unwarranted factual inferences.[17] This standard of review "'requires more than the bare assertion of legal conclusions.'"[18] The complaint must include direct or indirect allegations "respecting all the material elements to sustain a recovery under some viable legal theory."[19]

  B.  Plaintiffs' Complaint fails to set forth facts supporting a prima facie case under section 2 of the Voting Rights Act of 1965

Section 2(a) of the Voting Rights Act of 1965 prohibits States or political subdivisions from imposing any "voting qualification or prerequisite to voting or standard, practice, or procedure" that "results in a denial or abridgement of the right of any citizen of the United States

---

[16] See *Albright v Oliver*, 510 US 266; 114 S Ct 807; 127 L Ed 2d 114 (1994); *Bower v. Federal Express Corp*, 96 F3d 200, 203 (CA6, 1996); *Forest v United States Postal Service*, 97 F3d 137, 139 (CA 6, 1996).
[17] *Gregory v Shelby County*, 220 F3d 433, 446 (CA 6, 2000).
[18] *In re Sofamor Danek Group, Inc*, 123 F3d 394, 400 (CA 6, 1997) (internal citation omitted).
[19] *In re DeLorean Motor Co*, 991 F2d 1236, 1240 (CA 6, 1993) (citations omitted).

to vote on account of race or color."[20] Section 2 broadly protects the franchise and includes "all action necessary to make a vote effective" including "casting a ballot and having such ballot counted properly."[21] Section 2(b) of the Act provides that an electoral practice or procedure results in a violation of the franchise under section (a)[22]:

> if, based on the totality of circumstances, it is shown that the political processes leading to nomination or election in the State or political subdivision are not equally open to participation by members of a class of citizens protected by subsection (a) of this section in that its members have less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice.

Plaintiffs' claim under this section fails because they have not alleged any facts in their Complaint demonstrating that their "right to vote," or the right of any citizen to vote, has been or will be "den[ied] or abridge[d]" in any manner by any of the events surrounding the placement of the MCRI petition on the November 2006 general election ballot. The dispute involving the MCRI petition has taken place in the context of the constitutionally and statutorily authorized initiative petition process, not the voting process.[23] Courts have held that provisions of the Voting Rights Act do not apply to the initiative process.[24]

For example, in *Delgado v Smith*, the United States Court of Appeals for the Eleventh Circuit held that the Voting Rights Act did not apply to initiative petitions and that the involvement by state officials in the initiative process did not constitute state action.[25] There, the plaintiffs filed a complaint seeking declaratory and injunctive relief under the Voting Rights Act,

---

[20] 42 USC 1973(a).
[21] 42 USC 1973l (c)(1).
[22] 42 USC 1973(b).
[23] See Const 1963, art 12, § 2; MCL 168.471.
[24] See *Delgado v Smith*, 861 F2d 1489 (CA 11, 1988), cert den 492 US 918 (1989); *Montero v Meyer*, 861 F2d 603, 607 (CA 10, 1988), cert den 492 US 921 (1989); *Lucas v Townsend*, 714 F Supp 525 (MD Ga, 1989). Cf. *Padilla v Lever*, 429 F3d 910 (CA 9, 2005), reh en banc granted 446 F3d 922 (CA 9, 2006), opinion withdrawn 446 F3d 963 (CA 9, 2006).
[25] *Delgado*, 861 F2d at 1490-1491.

arguing that a proposed amendment to the Florida Constitution that would make English the official state language was improperly placed on the ballot because the initiative petition sheets were not circulated in Spanish as well as English in bilingual areas as required under section 5 of the Act.[26] The Eleventh Circuit examined the history of the Act, and acknowledged that the Act was to be given the "broadest scope possible," but determined that "legislative history demonstrates that in enacting the Act and its amendments, Congress was concerned exclusively with the ability of all citizens to exercise their right to *vote.*"[27] The Court recounted the various amendments to the Act and observed that "Congress has never shown any intent, either in the text of its legislation or in the legislative history, to expand coverage of the Act to materials distributed by private citizens."[28] The *Delgado* Court noted that other courts had rejected similar arguments, and quoted approvingly from *Zaldivar v City of Los Angeles* where[29]:

> [T]he court held that a notice of intention to recall, published in English only by proponents of a recall election, did not violate the Act. In a well-reasoned opinion, the court explained that the petition process was far too removed from the voting booth to fall under the Act:
>
>> The language of the [Act] indicates that it applies to information relating to the electoral process. . . . Such a position requires a rather distorted view of the electoral process because nothing one would associate with an election occurs at that stage; principally, no voting occurs . . . The Court cannot reasonably conclude that such conduct violates the Act when it is merely the first step in a process which might ultimately lead to the holding of an election to recall an elected official. . . . Legislative history indicates Congress was concerned about impediments to a citizen's ability to exercise his right to vote. Spanish speaking citizens cannot be considered to have been deprived of their right to vote by the publication of a notice of intent to recall in English only.

---

[26] *Delgado*, 861 F2d at 1491-1492.
[27] *Delgado*, 861 F2d at 1492 (internal citations omitted; emphasis in original).
[28] *Delgado*, 861 F2d at 1493.
[29] *Delgado*, 861 F2d at 1493, quoting *Zaldivar v City of Los Angeles*, 590 F Supp 852 (CD Cal 1984), rev'd on other grounds, 780 F2d 823 (CA 9, 1986).

The Court also noted the result in *Montero v Meyer*, where the Tenth Circuit addressed a question nearly identical to that in *Delgado*, and held (1) that the circulation of an initiative petition is not a "prerequisite to voting" under 42 USC 1973l (c)(1) since it does not "relate directly to the casting of a ballot" and thus cannot be included within the definition of "voting" under subsection 1973b(f)(4); and (2) that the Act does not apply to the petition process in its own right.[30] Based on legislative history and these prior decisions, the *Delgado* Court concluded that the Voting Rights Act did not apply to the petition process.[31]

Although the *Delgado* Court determined that the Act did not apply to the petition process on its face, the panel also made important observations regarding the First Amendment questions that would arise if the Court had accepted the plaintiffs' arguments. The Court noted that the Florida Constitution specifically reserved to the people the power and right to amend the constitution by initiative. "Thus, any degree of governmental hindrance upon the freedom of a given group of citizens to pursue the initiative petition process with whomever, and concerning whatever they choose must be viewed with some suspicion."[32] The Court then quoted from the United States Supreme Court's decision in *Meyer v Grant*, which held that a Colorado statute prohibiting the use of paid circulators to gather signatures on an initiative petition violated the First and Fourteenth Amendments[33]:

> "Appellees seek by petition to achieve political change in Colorado; their right freely to engage in discussions concerning the need for that change is guarded by the First Amendment. . . . The circulation of an initiative petition of necessity involves both the expression of a desire for political change and a discussion of

---

[30] *Delgado*, 861 F2d at 1493, quoting *Montero*, 862 F2d 603.

[31] With respect to section 2 of the Voting Rights Act, the district court in *Lucas*, 714 F Supp at 529, 532-533, concluded that a county election board's exercise of discretion in combining school bond proposals into one question rather than several, was not conduct or activity encompassed by the Voting Rights Act.

[32] *Delgado*, 861 F2d at 1494.

[33] *Delgado*, 861 F2d at 1494, quoting *Meyer v Grant*, 486 US 414; 108 S Ct 1886; 100 L Ed 2d 425 (1988)(emphasis added).

13

> the merits of the proposed change. . . . This will in almost every case involve an explanation of the nature of the proposal and why its advocates support it. *Thus, the circulation of a petition involves the type of interactive communication concerning political change that is appropriately described as 'core political speech.'*

In light of *Meyer* and other decisions by the Supreme Court striking down restrictions on political speech and freedom of association, the *Delgado* Court concluded that it was "reluctant to construe a federal statute to mandate the imposition of a substantial burden on the right of political association, particularly where the clear language of the Act does not so require."[34] The Court did not believe that Congress intended to subject private citizens engaging in the initiative process to the rigors of the Act. "Rather, the interests of both the First Amendment and the Voting Rights Act can be harmonized by limiting the latter to those activities involved in casting a vote and not to political speech."[35]

The State Defendants assert that under this case law and the plain language of the Voting Rights Act, section 2 does not apply to the initiative petition process – a process that involves protected speech under the First Amendment – because that process does not involve the right to vote. Plaintiffs have cited no actions taken by the State defendants that will result in the denial or abridgment of any citizen's right to vote regarding this or any other ballot proposal or candidate. Presumably, as long as Plaintiffs or their members are qualified and registered electors, they will be free to enter the polls on November 7, 2006, and cast their ballots in opposition to the MCRI petition. Accordingly, this Court should dismiss Plaintiffs' Complaint for failure to state a claim on this basis.

Moreover, even if the petition process falls within the scope of activity or conduct encompassed by the Voting Rights Act, Plaintiffs have failed to specifically identify what

---

[34] *Delgado*, 861 F2d at 1495.
[35] *Delgado*, 861 F2d at 1495.

"voting qualification or prerequisite to voting or standard, practice or procedure" the State Defendants have "imposed" that will result in the "denial or abridgement" of the right to vote on "account of race or color." Plaintiffs point to the fact that the Michigan Court of Appeals has ordered the State Defendants to place the proposal on the ballot, and to the fact that some of the Defendants have taken actions pursuant to that order. Nothing in the Act supports a conclusion that a court order "imposed" upon the State Defendants is a "voting qualification or prerequisite to voting or standard, practice or procedure" for purposes of section 2. Additionally, the Court's order neither has nor will deny any of the Plaintiffs the right to vote on the ballot proposal on account of race or color. Rather, the Court's order will allow all Michigan electors the opportunity to vote on this question this fall. The facts as alleged in this case simply do not support a claim under section 2 of the Voting Rights Act.

Plaintiffs' claims are somewhat analogous to those made and dismissed in *McGee v City of Warrensville Heights*.[36] There several unsuccessful candidates for local office filed a Voting Rights Act claim against two local officials, who had unlawfully used a police computer system to obtain damaging information regarding the candidates, which the officials then disseminated with the intent of sabotaging the candidates' chances for election.[37] The plaintiffs argued that the officials' use of the police computer to conduct investigations of the candidates denied or abridged the right to vote on account of race in violation of section 2 of the Act because minority citizens of Warrensville Heights were denied the opportunity to elect candidates of their choice on an equal basis with non-minority voters.[38] The plaintiffs further alleged that practices such as the police computer snooping impeded free access to the political process.[39] The Court observed

---

[36] *McGee v City of Warrensville Heights*, 16 F Supp 2d 837 (ND Ohio, 1998).
[37] *McGee*, 16 F Supp 2d at 842.
[38] *McGee*, 16 F Supp 2d at 844.
[39] *McGee*, 16 F Supp 2d at 844.

that to bring a cause of action under section of the Act, the plaintiffs "must allege that 'the challenged system or practice, in the context of all the circumstances in the jurisdiction in question, results in minorities being denied equal access to the political process,'" and that "[w]ithout some plausible allegation that minorities were denied equal access to the political process, a complaint under section 2 of the Voting Rights Act fails."[40] The Court determined that the plaintiffs failed to meet this standard[41]:

> Apart from a conclusion that defendants' conduct "results in the denial of [sic] abridgment of right to vote on account of race and denies minority citizens of Warrensville Heights, Ohio the opportunity to elect candidates of choice on an equal basis with other voters," the plaintiffs make no allegations showing an abridgment of the right to vote of any citizen, protected or not protected.
>
> In 1982, Congress amended Section 2 of the Voting Rights Act. The legislative history accompanying the 1982 amendments suggests the nature of conduct that section 2 was directed at. Nothing in the language of § 2 or the legislative history of § 2 of the Voting Rights Act suggests that it was aimed at political dirty tricks.

The Court noted the absence of any allegations that minorities were excluded from the process or that fewer minorities were elected to office as a result of the defendant's practices. "Section 2 prohibits election practices resulting in minorities losing elections because of discrimination and exclusion, not because of fractioned political alliances. Without a more particularized allegation that practices worked to exclude minorities on the basis of race, § 2 will not support an action arising from campaign 'dirty tricks.'"[42] In concluding, the Court noted that while use of the police computer in that case might have been reprehensible, not every incidental burden on the right to vote violates section 2.[43] Thus, the Court found that the plaintiffs had not alleged a cause of action under section 2 of the Voting Rights Act because their complaint revealed "no

---

[40] *McGee*, 16 F Supp 2d at 845 (internal citations omitted).
[41] *McGee*, 16 F Supp 2d at 845.
[42] *McGee*, 16 F Supp 2d at 845.
[43] *McGee*, 16 F Supp 2d at 846.

16

allegation other than the complaint that dirty tricks impaired their campaign prospects. Such is insufficient, as a matter of law."[44]

In this case, as in *McGee*, Plaintiffs have essentially alleged nothing more than a case of political "dirty tricks" in the petition circulation process that has not had the effect of excluding minorities from the electoral process or denying or abridging Plaintiffs' or any other citizens right to vote on account of race or color. Accordingly, Plaintiffs' Complaint should be dismissed as a matter of law on this basis as well.

Finally, with respect to the allegations of fraud, in *Welch v McKenzie* the plaintiffs brought suit under section 2 of the Voting Rights Act following an election containing many voting irregularities.[45] The plaintiffs, a black candidate and voters, argued that the irregularities, errors, and fraud in the distribution and counting of absentee ballots, which resulted in a narrow victory for the white incumbent, either was racially motivated or had the effect of diluting the votes of black voters.[46] The United States Court of Appeals for the Fifth Circuit concluded that although there were errors in the process, the plaintiffs had not presented any evidence that the election officials had intended to discriminate on the basis of race. Moreover, the Court of Appeals observed that the fraudulent acts were committed by the opposing candidate, Hood, not the election officials, and that "[b]ecause section 2 only affords redress for voting practices 'imposed or applied by any State or political subdivision,' Hood's chicanery [was] not a Voting Rights Act infringement."[47] Thus, the Court concluded that[48]:

> [W]e are left with a case of election fraud that favored a white candidate over a black one. *Without racial motivation or state-created impairment of black votes, there was no violation of Section 2 of the Voting Rights Act.* Otherwise stated,

---

[44] *McGee*, 16 F Supp 2d at 846.
[45] *Welch v McKenzie*, 765 F2d 1311 (CA 5, 1985).
[46] *Welch*, 765 F2d at 1312-1314.
[47] *Welch*, 765 F2d at 1316 (internal citation omitted).
[48] *Welch*, 765 F2d at 1317 (emphasis added).

stolen elections in which the losing candidate was black are, while decidedly suspicious, not necessarily violations of the Voting Rights Act or the Constitution.

Here, as in *Welch*, the alleged fraud was not committed by the State Defendants, but rather allegedly by private citizens circulating petitions for the Michigan Civil Rights Initiative. Plaintiffs, in fact, do not allege any actual wrongdoing on behalf of the State Defendants, recognizing that these Defendants have acted in accord with the court order. Under these circumstances, Plaintiffs' claim of fraud does not support a cause of action under the Voting Rights Act, and should be dismissed.

## CONCLUSION AND RELIEF SOUGHT

Section 2 of the Voting Rights Act of 1965 prohibits States from imposing any voting qualifications, prerequisites to voting, standards, practices, or procedures that will deny or abridge a citizen's right to vote on account of race or color.  In this case, the State Defendants have taken no action that will abridge or deny Plaintiffs' or any other citizen's right to vote.  The disputes in this case involve the initiative petition process, which does not fall within the scope of the Act, and the claims of alleged fraud within the petition circulation process were not perpetrated by any state actor.  Under these facts, this Court should therefore dismiss Plaintiffs' Complaint because it fails to state a claim upon which relief may be granted under the Voting Rights Act.

            Respectfully submitted,

            Michael A. Cox
            Attorney General


            *s/Heather S. Meingast*
            Attorney for Defendant
            Michigan Department of Attorney General
            Public Employment, Elections &
            Tort Defense Division
            P.O. Box 30736
            Lansing, MI 48909
Dated: July 11, 2006      (517) 373-6434
            E-mail:  meingasth@michigan.gov
            (P55439)

## CERTIFICATE OF SERVICE

I hereby certify that on July 11, 2006, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing of the following: State

Defendants' Motion to Dismiss Pursuant to FR Civ P 12(b)(6) and Memorandum of Law in Support of Motion.

                                                *s/Heather S. Meingast*
                                                Attorney for State Defendants
                                                Michigan Department of Attorney General
                                                Public Employment, Elections &
                                                Tort Defense Division
                                                P.O. Box 30736
                                                Lansing, MI 48909
                                                (517) 373-6434
                                                E-mail:  meingasth@michigan.gov
                                                (P55439)